IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| LORETTA MANRING, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:05CV00058 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| JO ANNE B. BARNHART, | ) | By: James P. Jones |
| COMMISSIONER OF | ) | Chief United States District Judge |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams & Rutherford, Norton, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Loretta Manring filed this action challenging the final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits, and for supplemental security income benefits under titles II and XVI of the Social Security Act, 42 U.S.C.A. §§ 401-433, 1381-1383d

(West 2003 & Supp. 2006) ("Act").  Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405 (g) and 1383(c)(3).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The record reveals the plaintiff applied for benefits on October 4, 2000, alleging disability as of February 8, 1999, based on arthritis, diabetes, and back and leg A pain. (R. at 272.) This claim was denied. Following a hearing to review this claim, the administrative Law Judge ("ALJ") found the plaintiff was not under a disability. (R. at 11-22.) The Appeals Council declined review. (R. at 7-9.) By a decision dated August 15, 2003, the United States District Court remanded the case to the ALJ for further administrative action. On October 26, 2004, after conducting two additional hearings, the ALJ again found the plaintiff was not under a disability because she was capable of performing a significant number of jobs in the national economy. (R. at 200-212.) The Appeals Council declined jurisdiction on October 14,

2005. (R. 194-197.) The parties have filed cross motions for summary judgment and briefed the issues. This case is now ripe for decision.

II

The summary judgment record shows the following facts. The plaintiff was born on February 3, 1963, and was forty-one years old at the time of the ALJ's decision. (R. at 204.) She holds a general equivalency diploma with prior relevant work experience as a certified nursing assistant, a clean-up worker, and a laborer. (*Id.*) All of the jobs she has held were either unskilled or semi-skilled. The plaintiff stopped working in 1998 because of an inconvenient shift change and because her husband earned more money than she did. (R. at 29.) There is no evidence she left her job for medical reasons.

According to the record, Dr. Lesley Jones treated the plaintiff from March 10, 1998 through August 1998. The conditions treated by Dr. Jones included diabetes mellitus, depression, viral syndrome, bronchospasm, and left foot pain and swelling. (R. at 99-102.) On March 10, 1998, Dr. Jones continued to prescribe Prozac to the plaintiff for weight loss benefits. Dr. Jones also continued to keep her off diabetic medicines. On August 24, 1998, Dr. Jones treated the plaintiff for left foot pain, but noted she was obese and had good range of motion. (R. at 99.)

Dr. Eastridge treated the plaintiff from January 1999 through January 2001. (R. at 103-45.) On February 19, 1999, Dr. Eastridge noted that the plaintiff's asthma was stable and that she did not require any medication at the present time. On June 11, 1999, the plaintiff reported to Dr. Eastridge that she had cut back on her prescription of Glucophage to one tablet a day. (R. at 122.) In December 1999, Dr. Eastridge reported that the plaintiff's blood sugar was too high. (R. at 119.) He increased the plaintiff's dosage of Glucotrol. He also advised her that daily exercise and a loss of ten pounds would allow her to resume a lower dosage of Glucotrol. (R. at 119.)

On September 1, 2000, the plaintiff reported tingling in her left leg, a knot in the middle side of her knee, swelling of the leg, and inability to mover her foot. (R. at 105). Upon examination, the plaintiff was found to have no dorsal flexion or plantar flexion in her left foot. (*Id.*) On September 8, 2000, the plaintiff underwent nerve conduction studies. Abnormal electromyogram was noted to show spontaneous activity characterized by positive waves and, in some muscles, fibrillations. There was also a decreased interference pattern in all muscles examined below the knee. Dr. David Garriott concluded the process responsible for the plaintiff's needle electrode finding was most likely the sciatic nerve or lower lumbosacral plexus. (R. at 143.) He also noted that the absence of any spontaneous activity from the lumbar

paraspinal muscle did not rule out radiculopathy, but made radiculopathy less likely. (*Id.*)

On September 12, 2000, the plaintiff underwent X rays of her lumbar spine. The results were noted to be normal. (R. at 140.) An MRI of the plaintiff's lumbar spine was also within normal limits. (R. 140-41.)

On August 29, 2000, the plaintiff was evaluated by Dr. William Block regarding a left ankle orthosis secondary to ankle instability. (R. at 162.) The plaintiff stated that prior to giving birth she felt numbness in her left leg. (*Id.*) Dr. Block noted the plaintiff was able to walk without any difficulty. (*Id.*) Upon examination, Dr. Block felt that the symptoms exhibited by the plaintiff were consistent with personal nerve injury. The plaintiff was placed in rigid ankle splints to aid ambulation. (R. at 155-161.)

On August 29, 2000, the plaintiff was seen at Alexander Prosthetics and Orthotics for evaluation for a left ankle orthosis secondary to ankle instability and left leg numbness. (R. at 162.) The plaintiff was referred to Dr. Jarlath J. Mitchell, a neurologist, by Dr. Block for evaluation of weakness and numbness in her left lower extremity. From September through December 2000, Dr. Mitchell treated the plaintiff for complaints of weakness and numbness in her left foot. The plaintiff also complained of one or two episodes of bladder urgency without incontinence. (R. at

165.) Dr. Mitchell reported that the plaintiff experienced marked improvement with regard to her left leg weakness, and a physical examination revealed no muscle wasting. (R. at 163.) He also noted that the plaintiff's left and right side strength showed "minimal" weakness, and he believed the plaintiff ambulated well. (*Id.*) Dr. Mitchell believed that the plaintiff had made a good recovery and only suffered from diabetic peripheral sensory motor neuropathy. (R. at 164.) Although he noted she suffered from a mild diabetic peripheral motor neuropathy, which would probably not improve, he also noted that she would not experience any long-term disability from her condition. (R. at 164.)

In February 2001, Dr. Robert McGuffin, a state agency physician, reviewed the plaintiff's medical records and concluded that she could perform a full range of work requiring only a medium level of exertion. (R. at 168-76.) Dr. McGuffin stated that based on the record, the plaintiff's statements regarding difficulty with standing, bending, sitting, and walking were not credible. (R. at 175). In March 2001, Dr. Richard Sarrusco reviewed Dr. McGuffin's findings and agreed with his assessment. (R. at 176.)

On July 22, 2002, Dr. Mann completed a standardized medical form provided by the Commonwealth of Virginia Department of Social Services in order to assess the plaintiff's qualifications for temporary government benefits. Based on a July 8,

-6-

Case 2:05-cv-00058-JPJ-PMS   Document 16   Filed 01/25/07   Page 6 of 18   Pageid#: 67

2002 examination, Dr. Mann described the plaintiff as suffering from diabetes, hypertension, chronic obstructive pulmonary disease, and depression. On question two of the form relating to prognosis, Dr. Mann noted the plaintiff's condition was expected to deteriorate. On question three of the form, Dr. Mann checked "yes" in the box regarding whether the plaintiff was unable to work or severely limited in her capacity for self-support. (R. at 303.)

On February 24, 2004, the plaintiff was treated by Dr. G. E. Michael. Dr. Michael noted that the plaintiff's diabetes was under control. He noted that her biggest problem was depression. He diagnosed controlled diabetes mellitus, asthma with low PF, depression, morbid obesity, and chronic low back pain. (R. at 302.)

From March 9 to March 23, 2004, the plaintiff attended counseling sessions with a clinical social worker. (R. at 305-313.)

On April 26, 2004, B. Wayne Lanthorn, Ph.D., and Donna Abott, M.A., performed a psychological evaluation on the plaintiff. Dr. Lanthorn noted that the plaintiff was well oriented, that her memory was intact, that she could perform basic math computations, and that she had adequate common sense. (R. at 316.) The plaintiff reported that when her sugar level drops she has to eat and go to bed, when her sugar level is high, she is sick to her stomach and has headaches. During the

evaluation, the plaintiff also described a number of symptoms consistent with depression.

The plaintiff reported that her activities of daily living included caring for her three-year-old daughter, doing laundry, cooking, and cleaning. (R. at 317.) She also mentioned that she was able to go to the grocery store, that she managed her own bills, and that she attended church. (*Id.*) She stated that she was able to drive and travel without assistance. (R. at 317.) The plaintiff also stated that on occasion she would visit with people during the day, go to the park, and take her daughter out to eat. (*Id.*)

Dr. Lanthorn diagnosed mood disorder due to general medical conditions with depressive features. (R. at 319.) He rated the plaintiff's global assessment of functioning score at sixty-five. (*Id.*) He also opined that the plaintiff had an unlimited ability to understand, remember, and carry out simple job instructions. (R. at 322.)

In regard to the plaintiff's mental ability to do work-related activities, Ms. Abott opined that the plaintiff's ability to function was seriously limited, but not precluded, in the areas of dealing with work stresses, understanding, remembering, and carrying out complex job instructions, and demonstrating reliability. (R at 321-23.) However, it was noted that the plaintiff had a good ability to understand, remember, and carry out detailed, but not complex, instructions. (R. at 322.) She

also had a fair ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, function independently, maintain attention and concentration, maintain her personal appearance, behave in an emotionally stable manner, and relate predictably in social situations. (R. at 321-22.)

During her the August 24, 2004 hearing before the ALJ, a vocational expert ("VE"), Cathy Sanders, testified that a hypothetical individual with the plaintiff's impairments would be capable of working as a file clerk, information clerk, a non-postal mail clerk, and a ticket clerk. (R. at 264.)

In his August 26, 2004 decision, the ALJ found that the plaintiff had the residual functional capacity ("RFC") to perform low stress light work that did not require standing and walking for more than one hour at a time and that did not require working around dust, fumes, and other respiratory irritants. (R. at 211.) Although the ALJ found the plaintiff was not capable of performing her past relevant work, based on the VE's testimony, the ALJ found the plaintiff was able to perform a significant number of jobs existing in the national economy. (R. at 212.) Based on his findings, the ALJ concluded the plaintiff was not disabled within the meaning of the Act at any time through the date of the decision. (*Id.*)

III

The plaintiff argues that there is a lack of substantial evidence to support the decision of the ALJ because he failed to identify the plaintiff's functional limitations, assess her work related abilities, or explain how medical evidence supported his RFC assessment. The plaintiff claims the ALJ violated the requirements of Social Security Ruling ("SSR") 96-8p by failing to undertake a function by function analysis. A RFC finding is based on all credible evidence. *See* 20 CFR §§ 404.1520(a)(e)(f); 404.1545-46, and 404.1560-61 (2006).

SSR 96-8p requires that the "RFC assessment must first identify the individual's functional limitation or restrictions and assess his or her work-related abilities on a function-by-function basis." In reading the requirements of SSR 96-8p, the plaintiff conflates what must be considered in assessing RFC and what must be fully discussed in the ALJ's notice of decision. In his findings, the ALJ specifically discussed the plaintiff's functional limitations. The fact the ALJ only discussed the areas in which the plaintiff was limited does not show he failed to take into consideration areas in which she was not limited. Indeed, the inference can easily be drawn that the ALJ assessed the plaintiff to not be functionally limited in the areas that he did not discuss.

-10-

The ALJ determined the plaintiff was capable of performing light work. Under the regulations, "light work" is defined as lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weight up to ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b) (2006). The record indicates the ALJ considered the functional limitations relevant to the plaintiff performing light work. The purpose of the RFC is to describe what a person is capable of doing despite his or her impairments. If an ALJ has failed to include any limitation on specific functional areas, an inference may be drawn from credible evidence on the record that a claimant is not limited in those particular areas. The record demonstrates that the ALJ considered all of the functions necessary for performing light work .

In some cases, it may not be possible to determine whether there is substantial evidence on the record if an ALJ decision does not specify the details of the claimant's RFC and merely describes it in general terms. *See Pfitzner v. Apfel*, 169 F.3d 566, 568-69 (8th Cir. 1999). In order to show a lack of substantial evidence, the plaintiff must show that the ALJ overlooked certain functions. Although in this instance the ALJ could have discussed the plaintiff's functions to a greater extent, the record does not reveal he overlooked the functions specified in SSR-86-8p. The ALJ did not merely describe the plaintiff's RFC in general terms. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003). As long as the ALJ made specific

-11-

findings in regard to the functions where a limitation was found, there is substantial evidence on the record to support the decision. *Id*.

Here, the ALJ specifically found that the plaintiff did not have the ability to stand or walk for more than an hour at a time; that she could only work in a low stress environment; and that she had a limited ability to work around environmental irritants such as dust and fumes. Although the ALJ did not discuss the plaintiff's ability to lift in the final RFC, he found she was not limited in this area beyond the statutory definition of light work.[1]

Considering the findings made by the ALJ and the record as a whole, the RFC determination was supported by substantial evidence.

IV

The plaintiff next argues the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that the plaintiff can perform.

---

[1] In his findings the ALJ noted that "Although Ms. Manring has an objectively identifiable medical impairment that can reasonably cause pain or discomfort, the objective evidence does not substantiate pain or discomfort at a level which would preclude wide range of light work, nor is there evidence of precipitating or aggravating factors causing pain or discomfort which would prevent a wide range of light work." (R. at 209.)

-12-

The Commissioner applies a five-step sequential evaluation process when assessing an applicant's disability claim. The Commissioner considers, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled severity of the listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520 (2006). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

In order to prevail, the plaintiff must show she is unable to return to her past relevant work because of her impairments. However, simply showing an inability to perform past relevant work is not enough to prevail. The plaintiff's claim may be defeated if the Commissioner is able to establish that the plaintiff retains the functional ability, considering her age, education, work experience, and impairments to perform alternative work that exists in significant numbers in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006).

In his decision, the ALJ found that the plaintiff is unable to perform past relevant work. In determining that the plaintiff could perform work present in the national economy, the Commissioner relied on the testimony of a VE. The plaintiff

argues that this determination was not supported by substantial evidence because the ALJ's hypothetical question to the VE failed to accurately portray the plaintiff's limitations. The ALJ determined that the plaintiff had the RFC to perform jobs that "do[] not require working around dust, fumes, and other respiratory irritants." (R. at 208.) However, the ALJ asked the VE to assume the plaintiff "can do no jobs that would expose her to excessive dust, fumes, chemicals or temperature extremes." (R. at 263.)

The plaintiff believes this hypothetical question did not accurately reflect the ALJ's own RFC determination because the question assumed the plaintiff could be exposed to some level of irritants. However, this argument is without merit in light of the VE's testimony that the jobs he identified for the plaintiff involved no exposure to irritants.[2]

The plaintiff also argues that the ALJ failed to consider the VE's answer to a hypothetical question that indicated that the plaintiff could not perform work. However, the VE's response was premised on the plaintiff's subjective complaints. An ALJ is not required to credit a VE's response to a hypothetical question where

---

[2] The VE stated: "There would actually be with standing and walking only one hour just at sedentary with the dust restriction, the low stress I can find information clerk and I believe that's all that I'm going to be able to come up with as far as the no dust and low stress." (R. at 263-64.)

-14-

such testimony is predicated solely on a plaintiff's subjective complaints. *See Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d. Cir. 1987).[3]

The plaintiff contends that the ALJ's credibility finding is not based on substantial evidence. The ALJ discounted the plaintiff's complaints of debilitating pain and discomfort. When evaluating subjective complaints, the regulations require (1) objective evidence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged followed by (2) an evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the individual's ability to work. 20 C.F.R. §§ 404.1529(b); 416.929(b); *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996).

By comparing the plaintiff's subjective complaints, the objective medical evidence, and the plaintiff's reported daily activities, the ALJ determined that the plaintiff's complaints were not entirely credible. The medical evidence indicated that the plaintiff could undertake a range of light work.

---

[3] The plaintiff argues that the record contains evidence to support the fact that the plaintiff would be unable to perform any jobs in the national economy because of absenteeism from work. In support of this argument, the plaintiff points to the fact that the plaintiff had scheduled three appointments for psychiatric treatment in March 2004 and one in August 2004. These appointments, even when coupled with her undisputed impairments, do not contradict the findings of the ALJ.

-15-

The plaintiff also reported undertaking a range of daily activities that undermined the credibility of her subjective complaints. The plaintiff stated to Dr. Lanthorn that she was able to perform a wide range of daily activities including caring for her three-year-old daughter, doing laundry, cooking, cleaning, grocery shopping, paying bills, attending church, driving alone, traveling alone, and taking her daughter out to restaurants. The ALJ was entitled to concluded that the plaintiff's complaints were inconsistent with both the objective medical evidence and her reported daily activities. In light of the objective medical evidence and the plaintiff's daily activities, there was substantial evidence to support the findings of the ALJ.

V

Finally, the plaintiff asserts that the ALJ erred by failing to address Dr. Mann's opinion that the plaintiff was disabled. The plaintiff is correct that the ALJ should have addressed Dr. Mann's opinion. However, this error, standing alone, is insufficient to justify a remand in this case. There is no reason to believe a remand would lead to a different result. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) (finding that a remand is unnecessary if "it will amount to no more than an empty exercise."); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand

a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

In light of the substantial medical evidence weighing against the plaintiff's claim of disability, any error in failing to address Dr. Mann's opinion is harmless. It is unlikely remand would result in a different outcome. Only a treating physician's opinion is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d); 416.927(d) (2006). However, the record fails to demonstrate that Dr. Mann had any kind of ongoing treatment relationship with the plaintiff.

It is unlikely that Dr. Mann would be considered a treating physician under the applicable regulations. The only evidence reflecting Dr. Mann's treatment of the plaintiff is a standardized check-the-box form. Aside from this form, there is no evidence on the record that the plaintiff was examined by Dr. Mann. Therefore, it is impossible to determine whether in fact Dr. Mann's opinion was supported by any medically acceptable clinical and laboratory diagnostic techniques. Finally, Dr. Mann's opinion appears to be in conflict with the other medical evidence on the record.

Although Dr. Mann's opinion should have been addressed in some manner by the ALJ, it is unlikely a remand would produce a different result. Accordingly, a remand to the ALJ for the purposes of addressing Dr. Mann's opinion would be superfluous.

## VII.

For the forgoing reasons, the plaintiff's motion for summary judgment will be denied, and the defendant's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

>DATED: January 25, 2007
>
> /s/ JAMES P. JONES
>Chief United States District Judge